WILLIAM LEMON AND BRIDGET LEMON, APPELLANTS,

*v.*

S. WATERMAN AND SOLOMAN I. KATZ, APPELLEES.

The common law which was in force in the Territory in 1867 was so far modified in relation to the real estate of a married woman as to exempt it from liability for the debt of the husband, so long as she, or any minor heir of her body, should be living, and this law as modified is still in force.

The effect of this legislation is not to abrogate the interest of the husband in the wife's real estate, but to create an exemption of the husband's estate in the wife's property in favor of the wife.

The Statute of 1869, entitled "An act defining the rights of husband and wife," was prospective in its operations, and did not require that a wife conform to its requirements, in filing in the County Auditor's office an inventory of her real estate acquired before its passage.

It is settled by the Courts, where community statutes exist, that property acquired by the wife during coverture in her own name is, *prima facie*, common property.

Sections 3, 4, and 5 of said act were designed to protect against frauds, which otherwise might easily have been perpetrated by a husband and wife respecting property acquired after its passage, but could not have the effect of divesting the wife of her former-acquired estate.

A complaint setting forth the ownership of real estate by the wife, acquired in her separate right and in her name in the year 1867; that the same was subsequently sold on execution to satisfy a judgment against the husband; and the delivery and recording of a sheriff's deed pursuant to such sale, does not state facts sufficient to cast a cloud upon the title of the wife.

But where the further allegation is made, that the land is not in actual possession of any one, the complaint does, under Section 551, Code 1881, state facts sufficient to entitle the party to equitable relief.

APPEAL from the Second Judicial District, holding terms at Olympia.

*C. W. Hartman, D. P. Ballard,* and *J. C. McFadden,* for Appellants.

The defendants, in their answer, allege that Philip D. Moore was the equitable owner of the land after the deed from Cook and Wife, of date 1867, meaning thereby that while the legal title to the lands was in Phœbe, she held it in trust for Philip. Such would not be the presumption of law. (Pomeroy's Equity Jurisprudence; Wells' Separate Property of Married Women, p. 266.)

But on the contrary, if the purchase money were paid by Philip, her husband, the presumption of post-nuptial settlement would prevail, until broken down by allegations and proof of trust relation between Philip and Phœbe, his wife, or that the conveyance was taken in the name of Phœbe, with intent to defraud the present or future creditors of Philip. Nothing of this nature arises under the pleadings or proofs in this case. (See also *Myer* v. *Kinser,* 12 Cal. 251 ; 2 Vernon Rep. 67 ; 8 Vesey, 199 ; Freeman on Cotenancy and Partition, pp. 200, 204, Sec. 144, *et seq.*), where the doctrine of presumptions of titles arising from conveyance to wife is discussed. 4 Kent's Commentaries, 1st ed., p. 453 ; Wells' Separate Property of Married Women, p. 152, Sec. 93 ; *Wing* v. *Goodman,* 75 Ill. Rep. 163 ; 2 Pomeroy's Equity Jurisprudence, Sec. 630 ; 2 Pomeroy's Equity Jurisprudence, 611.) Therefore, the defendants' judgment never attached as a lien upon the lands in question. (Freeman on Judgments, Sec. 359, and authorities cited in notes 6, 7, and 8 ; *Aldridge* v. *Muirhead,* 101 U. S. 397 ; Schouler on Husband and Wife, Secs. 282, 371, *et seq.;* *Clark* v. *Killian,* 103 U. S. 225 ; *Brown* v. *Carter,* 5 Vesey, 877.)

The Statute of 1869, re-enacted in 1878 (Statutes, p. 450), adopted in this Territory the community system, or conjugal partnership of the civil law in place of the common law system regulating

the property rights of husband and wife. The main features of the act were taken from the California statute. The second section of the statute wrought the innovation in our system of law. It made all property acquired after the marriage, except by gift, devise, or descent, common or partnership property. Then it was foreseen by the Legislature that if lands were purchased during coverture, and the deed or conveyance taken in the name of the wife, and even though acquired with her own funds, yet the Court would construe the title of the property thus acquired to be *prima facie* common property, and therefore subject to the husband's or community debts; yet that the wife might show by parol the true nature of the transaction. (*Ramsdell* v. *Fuller*, 28 Cal. 38; *Peck* v. *Brumigan*, 31 Cal. 450; *Higgins* v. *Higgins*, 48 Cal. 263.) To avoid these conflicts, the Legislature, we may presume, engrafted on to the statute the provisions contained in the third, fourth, and fifth sections.

After claiming the land for seven years under their title—interfering with the management, sale, and ownership of it by plaintiffs and their grantors, insisting in this case that they were the owners, not disclaiming—it is too late, and they will not be heard, to say that their deed is not a cloud upon our title. This doctrine is fully discussed by the Supreme Court of the United States in the recent case of *Holland* v. *Challon*, 110 U. S. 15, to which we refer. (See also Code of Washington, Sec. 551; *Redmond* v. *Parkenham*, 65 Ill. 435; *Ashael Gage* v. *Simidt*, 104 Ill. 106; *Hanson* v. *Moore*, 104 Ill. 404; *Hager* v. *Shindler*, 29 Cal. 53, per Shafter, Judge; 3 Pomeroy's Equity Jurisprudence, pp. 413, 414, Secs. 1376 and 1395; *Ferris* v. *Irving*, 28 Cal. 647.)

*McNaught, Ferry, McNaught & Mitchell,* for Appellees.

Even under our Married Woman's Acts, as in force in this Territory and elsewhere in this country, acquisitions of property during coverture, whether placed of record, as far as title is concerned, in the name of the husband or wife, are presumed to belong to the husband; or where the community system is established, to the community; unless the conveyance by which the property is acquired expressly limits its ownership, use, benefit or control to the identical person in whose name it is taken.

And the husband or wife claiming the separate title must rebut this presumption by proof of the fact claimed.

The registry laws, as applied to the property of married women, are all based upon this presumption. (Schouler on Husband and Wife, Secs. 221, 222; Wells' Separate Property of Married Women, Secs. 249, 259, pp. 280, 287; *Reeves* v. *Webster*, 71 Ill. 307.)

Under the common law, in force in this Territory when the Exemption Law of 1854 was passed, as well as when this property was transferred to Phœbe H. Moore in 1867, the husband was entitled to a life estate, and rents, issues and profits in lands of the wife during their joint lifetime.

And if a child was born capable of inheriting, then after the death of the wife the husband became tenant by courtesy. (Wells' Separate Property of Married Women, p. 93, Secs. 18, 19; Bouvier's Dictionary, 1st vol. 675; *Prall et al.* v. *Smith and Wife*, 31 N. J. Law, 244; *Dayton* v. *Dusenberry et al.*, 25 N. J. Equity, 110; *Rose* v. *Sanderson*, 38 Ill. 248; Washburn on Real Property, 180, 181, Vol. 1.)

The effect of the provisions in the General Exemption Law of 1854, repealed and reënacted in 1863, and again in 1869 and 1873, providing for the exemption of wife's lands, and their rents, issues and profits, from attachment or execution for the debts of her husband, so long as she or any minor heir of her body should be living, was to create nothing more than an exemption; the common law was left unchanged as to the marital rights of the husband and wife in the property of each other. (Statutes of 1854, p. 178, Sec. 288; Statutes of 1863, p. 144, Sec. 288; Ibid, 197, Sec. 547; Statutes of 1869, p. 85, Sec. 337; Ibid, 175, Sec. 701; Statutes of 1873, p. 89, Sec. 335; Ibid, 179, Sec. 699; *Prall et al.* v. *Smith and Wife*, 31 New Jersey Law, 244; *Dayton* v. *Dusenbery et al.*, 25 New Jersey Equity, 110; *Wythe* v. *Smith*, 4 Sawyer, U. S. Circuit Court Rep. 1.)

The common law rights already referred to had vested in Philip D. Moore prior to 1869; the subsequent legislation, by which the act "Defining the Rights of Husband and Wife" was enacted in 1869, could not divest him of those rights, nor could the similar enactment of 1873. (Statutes of 1873, 450; Statutes of 1869, 318; *Wythe* v. *Smith*, 4 Sawyer, U. S. Cir. Ct.

1; Wells' Separate Property of Married Women, 93, Sec. 19 ; Cooley's Constitutional Limitations, 2d edition, top page 358.)

Exemption laws are subject to legislative changes. They do not create vested rights. The same is true of Laws of 1873. (Cooley's Constitutional Limitations, top pages, 286-7 ; *Bull* v. *Conroe*, 13 Wisconsin, 260 ; Statutes of 1869, 85, Sec. 337 ; Statutes of 1873, 450 ; *Spanger* v. *Compton*, 54 Georgia, 359 ; Thompson on Homestead and Exemptions, Sec. 15 ; Wells' Separate Property of Married Women, 240 *et seq.*)

The claim of an exemption is a personal privilege, and could only have been asserted, in the case of this property now in controversy, by Pœbe H. Moore, or some one authorized to act for her, in her behalf.

The appellants sustain no personal relations to such claim or right, and therefore are not in a position to assert it. It cannot be asserted by an assignee. (Freeman on Executions, Sec. 212; Thompson on Homestead and Exemptions, Sec. 820 ; Ibid, Sec. 15.)

The laws of 1869 and 1873 of this Territory, concerning registration and consequent exemption of a wife's property, were enacted not only for the purpose of giving notice of title, but also to provide a method for asserting a claim of exemption. The language of Sections 2, 3, 4 and 5 of these laws differs to such an extent from that of the laws of California, Oregon, New York and Ohio on the same subject, as to render the decisions cited from those several States of no authority upon the questions involved in this case. (Wells' Separate Property of Married Women, Sec. 240.)

Opinion by TURNER, Associate Justice.

This is a suit in equity to remove a cloud from the title to certain real property in the City of Olympia, described in the complaint. It was heard in the Court below upon the pleadings and the evidence, and after hearing, the judgment was that the complaint be dismissed.

The plaintiff prosecutes an appeal to this Court.

The principal question for our determination arises upon the findings of the Court below, and it is unnecessary to notice the pleadings, except in a particular to be hereafter mentioned.

Some question is made by the appellees as to some of the findings of fact, but after a careful scrutiny of the evidence, we think the findings substantially correct.

The second and third findings were substantially as follows:

2. That on the 2d day of February, 1867, Philip D. Moore and Phœbe H. Moore were husband and wife; that on said day Phœbe H. Moore received from William Cook and wife a deed of conveyance to a lot or tract of land, which included the property described in the complaint, which tract of land then became the separate estate of said Phœbe H. Moore.

3. That on the 18th and 27th days of December, 1883, by good and sufficient conveyance, the property described in the complaint was conveyed to the plaintiffs by said Philip D. Moore and said Phœbe H. Moore. The fourth finding, to which the foregoing are but explanatory, and upon which the question in the case arises, was as follows:

"That said Phœbe H. Moore was on the 24th day of April, 1876, the wife of Philip D. Moore, and had not nor has ever caused to be recorded, as required by law, an inventory of her separate estate, including the lots and lands hereinbefore described, in the office of the Auditor of Thurston County; and on said day the said Sheriff of Thurston County, Washington Territory, sold all the right, title, and interest of Philip D. Moore in said lands to defendants herein, under and by virtue of an execution upon a judgment against said Philip D. Moore, upon a debt contracted by said Philip D. Moore in the year 1874.

That thereafter said sheriff duly executed a deed of said interest to defendants, who had caused the same to be recorded in the office of the County Auditor of said Thurston County, at pages 184 and 185 of Volume 13, Deeds.

That said lands at the commencement of this action were vacant and unoccupied, and the said deed now remains of record in said office, and is regular in form upon its face; and the defendants are the owners of an estate in the said lands, by virtue of the said sheriff's sale and deed.

Under the common law, a husband was vested with a freehold estate in the lands of his wife for their joint lives, and upon the birth of a child during coverture, with a freehold estate for his own life. This estate might be levied on, and sold

on execution at the common law for the husband's debts. (Schouler on Husband and Wife, Secs. 167, 168, and authorities there cited; *Starr* v. *Hamilton,* Deady's Circuit Court Reports, 268.)

But at the time this property was conveyed to Mrs. Moore, the common law, as stated above, had been modified by statute in this Territory.

In the Civil Practice Act, passed April 28th, 1854, Laws of Washington, 1854–1856, p. 129, it was declared:

" Sec. 252. All real and personal estate to which any married woman shall hereafter become entitled in her own right, and all which may at the time of her marriage belong to her, and all the issues, rents and profits of such real estate, shall not be liable to attachment for, or execution upon, any liability or judgment against her husband, so long as she or any minor heir of her body shall be living : *Provided,* 'That her separate property shall not be exempt from attachment or execution where the debts were owing by the wife, previous to marriage, or may have been contracted for her benefit.' "

This law has been reënacted in each of the several revisions of the laws of this Territory, and may now be found as Section 341 of the Code of 1881.

It is insisted by the appellants that this provision of our statutes was intended to make the property of the wife, owned or acquired by her as defined by the statute, her separate property, as that term was understood at common law, and free from the marital rights of her husband. A somewhat similar provision in the Constitution of Oregon has been given this meaning by the Supreme Court of Oregon. (*Brummett* v. *Weaver,* 2 Oregon, 168.)

This construction was followed, and its reasoning elaborated, by Deady, District Judge, in *Starr* v. *Hamilton.* (Deady's Reports, U. S. Courts, 1850–1869, p. 268.)

We think, however, the better opinion in the construction of our statute is, that it creates an exemption of the husband's estate in the wife's property in favor of the wife.

The provision is found both in the Civil Practice Act of 1854 and in the Code of 1881, in the chapters relating to exemptions, and under the title " Exemptions." It does not in terms

do more than create an exemption, and no good reason exists for extending its import beyond its terms. An exemption of one person's property in favor of a different person is an anomaly ; but when the peculiar estate of a husband at common law in property acquired by the wife is considered, and the reasons of the law for creating such estate, the exemption will be seen to be an eminently just one, and one bearing a useful and perfectly consistent part in the scheme of the law.

The modification, then, in the common law made by our statutes at the time of the acquisition of this property by Mrs. Moore, was to exempt the estate of the husband therein from seizure and sale on execution for the husband's debts.

Did the fact, as found by the Court, that Mrs. Moore had failed to record an inventory of her separate estate prior to the levy of execution by the sheriff upon this property, divest her of the right to insist upon this exemption? The lower Court so found, and rendered judgment accordingly.

The law concerning the estate of the husband in the wife's property remained in this Territory as heretofore stated, until the passage of the act approved Dec. 2d, 1869, entitled, " An Act Defining the Rights of Husband and Wife." (Laws of Washington, 1869, 1871, p. 318.)

This act established the system of community property between husband and wife, the incidents of which are well known to the bar and the public.

It is hardly necessary to say that this act, whatever its terms, did not operate to divest the estate of either the husband or the wife in property held by them, or either of them, at the time of its passage. But there are provisions in the act which, it is claimed, have the effect of requiring the wife to do certain things, if she would insist on the exemption in her favor made by the Act of 1854, and which cuts off said exemption if she fail to do them.

Section 3 of the act requires the wife to make a full and complete inventory of her separate property, and to acknowledge and record said inventory in a manner pointed out by said section.

Section 5 provides: " The filing of any such inventory in the auditor's office shall be notice of the title of the wife, and all

property belonging to her included in the inventory, as well as any money in specie not so included, shall be exempt from seizure on execution for the debts of the husband; and she shall be deemed to have waived the exemption from such seizure on execution of all property belonging to her not included in any such inventory, other than money in specie."

We think these provisions must be construed as having reference only to property to be affected by the community system which the act of the Legislature brought into existence, and hence, as having no reference to property held by the wife in her own right before the passage of that act.

The system was not a new or untried one. It had been in existence for many years in California, Texas, and Louisiana. Its weakness and its strength were known. The right of husband and wife under it, and of creditors of one or both, had been discussed and determined by the Courts. We may well conclude that the provisions of the system in question were intended to have a specific application to property to be affected by the system, if we can find a useful purpose in connection with that system to which they may be applied.

It is settled by the Courts in construing the Community Property Law, that property acquired by the wife during coverture, the title to which is taken in her name, is *prima facie* common property, and therefore subject to the husband's community debts. This presumption may be rebutted by the wife, who may show the true nature of her title. It will be readily seen that a wide door is thus thrown open for fraud upon creditors, to say nothing of the field left for future litigation between heirs, devisees, and assignees claiming adversely under the husband or wife.

Sections 3, 4 and 5 of this act, we think, were intended to close this door.

It was competent for the Legislature, as to after-acquired property, to give full effect to the presumption that such property, even though title to it were taken in the name of the wife, was community property, unless the wife gave the public notice of her separate title. It was not competent for the Legislature to attach such presumption to property acquired by the wife before the passage of the act, her enjoyment of which, with

all the incidents thereof provided by law at the time of its acquisition, is preserved by constitutional guarantees.

Section 5 of the Act of 1869 cannot be construed, when read in connection with the other provisions of that act, as a mere exemption from sale in favor of the wife, of the estate of the husband in the wife's property, as in the Act of 1854.

The Act of 1869 destroys that estate. Therefore, if said act has a retroactive effect, it permits the wife's property to be sold for the husband's debts. As before stated, this might be permitted as to property acquired by the wife after the passage of the Act of 1869, and not inventoried by her, but it could not be permitted as to property held by her before the passage of that act.

Our conclusion is that full effect must be given in this case to the exemption provided by the Act of 1854, regardless of the failure of the wife to make and record an inventory of her property; and the failure upon the part of Mrs. Phœbe H. Moore to make and file such inventory, as found by the Court below, did not bar the plaintiffs from the relief prayed in the complaint.

The defendants took no interest in the lands in controversy, by virtue of the conveyance from the sheriff.

The appellees insist, however, that the complaint does not state facts sufficient to constitute a cause of action, and that the judgment of dismissal was correct on that ground.

The complaint sets up the sheriff's deed to appellees; alleges that the same is a cloud upon the plaintiffs' title, and prays that the same may be declared void and of no effect. We have seen that the appellees took no interest by virtue of the sheriff's deed, and that the same was null and void.

This being so, there is no cloud upon the plaintiffs' title, according to the principles of equity, and the complaint fails to state a cause of action. (Pomeroy's Equity Jurisprudence, Vol. 3, Sec. 1399, and authorities cited.)

Appellants rely upon Sec. 551 of the Code, as enlarging the equity jurisdiction in such cases. That section provides, among other things, that when " real property is not in the actual possession of any one, any person, or private or municipal corporation claiming title to any real property under a patent from the

United States, or during his or its claim of title to such real property under a patent from the United States for such real estate, may maintain a civil action against any person or persons, corporation or association, claiming an interest in said real property or any part thereof, or of any right thereto adverse to him, them or it, for the purpose of determining such claim, estate or interest."

We think the statute must be given the effect claimed for it ; and that where the property is not in the actual psssession of any one, as in this case, the jurisdiction of the Court can be maintained, notwithstanding the absolute invalidity of the claim or estate against which the true owner is moving.

In this case the complaint does not show that the appellees are claiming the property under their void conveyance.    The evidence, however, shows that fact, and we think the appellants should now be permitted to amend the complaint to correspond with the evidence in this respect.

The judgment of the lower Court is reversed, and the cause remanded, with directions to permit an amendment of the complaint, and to then proceed to judgment in accordance with this opinion.

We concur :  ROGER S. GREENE, Chief Justice.
          S. C. WINGARD, Associate Justice.